UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | : | |
|---|---|---|
| Will C. Abner, | : | Case No. 1:06 CV 2178 |
| | : | |
| | : | |
| Plaintiff, | : | JUDGE KATHLEEN O'MALLEY |
| | : | |
| v. | : | |
| | : | |
| Terry Collins, et al., | : | <u>MEMORANDUM & ORDER</u> |
| | : | |
| | : | |
| Defendants. | : | |

On September 11, 2006, Will C. Abner ("Abner" or "Plaintiff"), filed this action against Terry Collins, Assistant Director of the Ohio Department of Rehabilitation and Correction ("ODRC"); Reginald Wilkinson, Director of the ODRC; and various unknown parole board members with the ODRC (collectively, "Defendants") (Doc. 1). Plaintiff claims money damages to rectify an alleged deprivation of civil rights guaranteed by the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution - including a claimed conspiracy to violate those rights - under 42 U.S.C. § 1983.

On November 11, 2006, Defendants filed their *First Motion for Summary Judgment* (Doc. 4), which argues that the statute of limitations expired prior to the Plaintiff's filing of this case. The Plaintiff filed a response brief in opposition to the Defendants' summary judgment motion on December 22, 2006 (Doc. 7). The Defendants did not file a reply. For the reasons outlined further below, the Defendants' motion for summary judgment is **DENIED.**

**I. FACTUAL BACKGROUND**

On June 26, 1975, the Cuyahoga County Grand Jury indicted Abner on fourteen counts of rape, seven counts of kidnapping, four counts of felonious assault, five counts of aggravated burglary, and one count of attempted rape. On October 16, 1975, Abner pled guilty to eight counts of rape,[1] one count of attempted kidnapping,[2] and two counts of aggravated burglary.[3] The state nolled the remaining counts.

On October 17, 1975, the trial court sentenced Abner to five to twenty-five years each for counts one, three, eight, eleven, fourteen, eighteen, twenty, twenty-two, twenty-seven, and thirty (the rape and burglary counts). Additionally, the trial court sentenced Abner to three to ten years for count twenty-six (the kidnapping count). The confusion at the heart of this case arises from the original trial judge's journal entry stating: "Sentence as to counts one (1) and two (2) to run *consecutive* to each other, and concurrently with all remaining counts, that are to run concurrently with each other, and with sentence imposed." The state, however, had previously nolled count two pursuant to the plea agreement. Neither the Plaintiff nor the state addressed this oversight via direct appeal from the sentence.

Almost twenty-seven years later, on February 14, 2002, the state held a classification hearing pursuant to Ohio Revised Code § 2950.09(c) to determine whether Abner was a sexual predator. Before the scheduled hearing, Abner filed a motion to dismiss the hearing, a petition for writ of

---

[1] Counts 1, 3, 8, 11, 14, 18, 20, 22

[2] Count 26

[3] Counts 27, 30

habeas corpus, and a notice of expiration of sentence. At the hearing, the trial court[4] determined that the intention of the 1975 sentencing order was to impose two consecutive sentences of five to twenty-five years, despite the substitution of a nolled count for the valid count intended to run consecutively to count one. The court entered a *nunc pro tunc* entry modifying the original 1975 sentencing entry to read, count one to run consecutive with count three and concurrent with all remaining counts. The court also found Abner to be a sexual predator. Abner appealed the court's findings.

On appeal, the Eighth District Court of Appeals for Cuyahoga County, Ohio, determined that the *nunc pro tunc* entry was improper, and that Abner's original sentence did not conform to the sentencing statute.[5] The appellate court remanded the case for re-sentencing, and on April 23, 2003, the trial court re-sentenced Abner to ten to fifty years. By this time, Abner had served approximately twenty-eight years in prison. Abner again appealed, and on April 22, 2004, the Eighth District Court of Appeals reversed the sentence the trial court had imposed on Abner and ordered his immediate release.[6]

For reasons not clear from the record, however, the ODRC did not discharge Abner pursuant to the Abner II decision. Instead, Abner learned of the April 22 appellate court decision through the prison mail system on May 26, 2004, at which time he alleges that he met with his unit manager.

---

[4] The judge who sentenced Abner in 1975 did not conduct the February 2002 hearing because he was no longer a sitting judge.

[5] See State v. Abner, 2002 Ohio App. LEXIS 6362, ("Abner I").

[6] See State v. Abner, 2004 Ohio App. LEXIS 1749, ("Abner II"). The basis of the appellate court's decision was that the subsequent court could not interpret the original sentencing judge's intent because he did not have the original plea agreement or sentencing transcripts as they were destroyed by fire.

3

According to Abner, the unit manager provided him with a document that showed the state had aggregated his twenty-five year sentence with a separate one to ten year sentence, and that his new release date was September 12, 2004. In his affidavit, Abner contends that he believed that the Defendants had calculated his sentence in accordance with <u>Abner II</u>. Abner did dispute the aggregated sentence, but only to the extent that he believed the aggregated sentence did not adequately account for time he had served prior to his original 1975 sentencing. Abner claims that he did not dispute the actual aggregation of the new sentence to his previous sentence because, based on the advice provided by his unit manager, he believed that the aggregation was in compliance with the <u>Abner II</u> decision.

The ODRC finally released Abner on September 12, 2004, after he had served about twenty-nine years of a twenty-five year sentence. Abner claims that he learned from his attorney on October 14, 2004 that the ODRC had been illegally holding him past the April 22, 2004 date pending their appeal of <u>Abner II</u> to the Supreme Court of Ohio. He also claims that his attorney informed him that the Supreme Court of Ohio denied leave to appeal on September 29, 2004. On September 11, 2006, one day shy of two years after his release from prison, Abner filed a complaint against the Defendants seeking relief under § 1983.

**II. DISCUSSION**

The sole basis of the Defendants motion for summary judgment is that the two-year statute of limitations applicable to § 1983 actions in Ohio bars the Plaintiff's suit. The Plaintiff concedes that a two-year statute of limitations applies to his § 1983 action, but argues that the statute of limitations did not begin to run until some point after his release from prison on September 12, 2004. Thus, the only question presently before the Court is when the two-year statute of limitations began

to run on the Plaintiff's § 1983 action.

### A. Legal Standard

Summary judgment is appropriate, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The ODRC Defendants, the parties moving for summary judgment, bear the initial burden of production under Rule 56. The Defendants may satisfy this burden by presenting affirmative evidence that negates an element of Abner's claim or by demonstrating, "an absence of evidence to support the non-moving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

If the Defendants meet this burden, Abner must, "set forth the specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The substantive law identifies which specific facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). To avoid summary judgment, Abner must, "make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

"The evidence of [Abner] is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 256 (citing Adickes v. Kress & Co., 398 U.S. 144, 158-59 (1970)). However, Abner must, "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "[T]he mere existence of some alleged factual disputes between the parties will not defeat an otherwise properly supported motion" for summary judgment. Anderson, 477 U.S. at 247-48.

### B. Analysis

The Defendants claim that the Plaintiff's § 1983 action is untimely under the two-year statute of limitations applicable in Ohio, arguing that the Plaintiff's cause of action accrued on April 22, 2004, when the state appellate court issued its decision in Abner II. According to the Defendants, it was at that point the Plaintiff knew or had reason to know of the alleged constitutional violations. The Defendants therefore contend that the statute of limitations for the Plaintiff's § 1983 action began to run on April 22, 2004 and that the Plaintiff's September 11, 2006 filing was untimely. At this stage of the proceedings, the Defendants' argument fails to persuade the Court.[7]

Although Ohio law determines that the applicable limitations period for a § 1983 action is two years, federal procedural law determines when the cause of action accrues and when the limitations period begins to run. Wallace v. Kato, 549 U.S. ----, 127 S. Ct. 1091 (2007). The Sixth Circuit has determined that, under federal law, "the statute of limitations begins to run when the plaintiff knows or has reason to know that the act providing the basis of his injury has occurred." Collyer v. Darling, 98 F.3d 211, 220 (6th Cir. 1996). "A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." Sevier v. Turner, 742 F.2d 262, 273 (6th Cir. 1984). Stated differently, courts "look to the event that should have alerted the typical lay person to protect his or her rights" in determining when a cause of action accrues in § 1983 cases. Trzebuckowski v. City of Cleveland, 319 F.3d 853, 856 (6th Cir. 2003).

In response to the Defendants' summary judgment motion, the Plaintiff first contends that the statute of limitations did not begin to run on his § 1983 motion until October 14, 2004, when he

---

[7] The Defendants have taken the unusual step of moving for summary judgment prior to filing an answer or pre-answer motion, or engaging in any discovery. As such, the record is particularly sparse.

6

first gained actual knowledge through his attorney of the reason for his continued imprisonment following the Abner II decision. In the alternative, Plaintiff argues that he did not know or have reason to know of his cause of action prior to October 2004, because it was his reasonable belief, based upon his exercise of reasonable diligence (*i.e.,* requesting the May 26 meeting with his prison unit manager), that his aggregated sentence was in compliance with the Abner II order.

The Defendants have not responded to Abner's assertion that he reasonably believed, as a result of the conversation with the unit manager, that his aggregated sentence was in compliance with the Abner II order and, therefore, that he did not know or have reason to know of his injury until October 2004. Defendants also have not provided any documentation or testimony that might serve to counter Abner's argument.

Second, Abner argues that the doctrine of equitable tolling should save his claim if the Court determines that the statute of limitations on his action began prior to September 12, 2004. A court must consider the following factors in determining whether to toll the statute of limitations due to equitable considerations:

> (1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing the claim.

Dunlap v. United States, 250 F.3d 1001, 1008 (6th Cir. 2001) (citing Andrews v. Orr, 851 F.2d 146, 152 (6th Cir. 1988)). As Abner indicates in his response, the five Andrews factors are not comprehensive, nor is each of the five factors relevant in all cases. Graham-Humphreys v. Memphis Brooks Museum of Art, Inc., 209 F.3d 552, 561 (6th Cir. 2000).

The Sixth Circuit has cautioned that courts should sparingly grant equitable tolling of the

statute of limitations. See Dunlap, 250 F.3d at 1008-09. Nonetheless, Abner argues that in this case it would be unfair and inequitable to begin the running of the statute of limitations on April 22, 2004. He contends that he did not have actual notice of his claim until he met with his lawyer in October 2004, and he could not have had constructive notice until his release from prison on September 12, 2004 at the earliest.[8] The Court's review of the events also indicates that Abner did not "sleep on his rights." On the contrary, Abner filed two appeals and, upon hearing the disposition of his second appeal, immediately contacted his unit manager. What transpired at that meeting remains unclear, but given the Defendants complete failure to reply to Abner's equitable tolling argument, the Court cannot discount it.

This Court, accepting as true all factual inferences in favor of the Plaintiff, cannot say as a matter of law either that the Plaintiff knew or had reason to know of his injury on April 22, 2004, or that equitable tolling would be unavailable in the circumstances at issue here.[9] First, Abner did not even receive notice of the Abner II decision through the prison mail system until May 26, 2004. Second, the Defendants have not rebutted Abner's contention that he met with his unit manager on the same day he learned of the Abner II discharge order, and that the unit manager led Abner to believe that his adjusted September 12, 2004 release date complied with the Abner II decision. The

---

[8] Relatedly, the doctrine of equitable estoppel or fraudulent concealment might also toll the statute of limitations in this case based on the unit manager's alleged representation to Abner that the state had aggregated his sentence in compliance with Abner II. See Bridgeport Music, Inc. v. Diamond Time, Ltd., 371 F.3d 883, 891 (6th Cir. 2004) (citations and internal quotations omitted) ("Equitable estoppel, sometimes referred to as fraudulent concealment, is invoked in cases where the defendant takes active steps to prevent the plaintiff from suing in time . . . . Application of equitable estoppel should be premised on a defendant's improper conduct as well as a plaintiff's actual and reasonable reliance thereon.").

[9] The Court recognizes the Plaintiff's request for oral argument, but believes that such a proceeding would be premature at this point given the limited nature of the record.

Defendants failure to rebut Abner's assertions with respect to his "reasonable belief" arising from circumstances surrounding Abner's meeting with the unit manager requires denial of their motion.

## III. CONCLUSION

For the reasons stated above, the Defendants' *First Motion for Summary Judgment* (Doc. 4) is **DENIED.**

**IT IS SO ORDERED.**

s/ Kathleen M. O'Malley
**KATHLEEN M. O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: June 13, 2007**