**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| Will C. Abner, Jr., | : | Case No. 1:06-CV-2178 |
| Plaintiff, | : | |
| | : | JUDGE KATHLEEN O'MALLEY |
| v. | : | |
| Terry Collins, et al., | : | **MEMORANDUM & ORDER** |
| Defendants. | : | |

The instant action has been brought by Plaintiff Will C. Abner ("Abner") against Terry Collins, Reginald Wilkinson, and John/Jane Does 1-10 ("Defendants"). Abner alleges that the Defendants violated his civil rights on numerous occasions between 1975 and 2004, while he was in the custody of the Ohio Department of Rehabilitation and Correction ("ODRC"). Defendants deny that they violated Abner's rights and, importantly, assert that Abner's claims are time-barred.

Defendants have now filed a Second Motion for Summary Judgement. (Doc. 44.) For the following reasons, this motion is **GRANTED**.

**I. STANDARD OF REVIEW**

Defendants have moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. (Doc. 44.) Under Rule 56(c), summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

In reviewing summary judgment motions, this Court must view evidence in the light most favorable to the non-moving party to determine whether a genuine issue of material fact exists.

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *CenTra, Inc. v. Estrin*, 538 F.3d 402, 412 (6th Cir. Mich. 2008). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases, the Court will decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Anderson*, 398 U.S. at 252.

Upon filing a motion for summary judgment, the moving party has the initial burden of establishing that there are no genuine issues of material fact as to an essential element of the non-moving party's claim. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 & n.12 (6th Cir. 1989); *Chappell v. City of Cleveland*, 584 F. Supp. 2d 974, 988 (N.D. Ohio 2008). The moving party, however, is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the moving party relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Chappell*, 584 F. Supp. 2d at 987.

In response, if the moving party establishes the absence of a genuine issue of material fact, to defeat summary judgment, the non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In this regard, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment"; rather, "Rule 56 allocates that duty to the opponent of the motion, who is required to point out the evidence, albeit evidence that is

already in the record, that creates an issue of fact." *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 379-80 (6th Cir. 2007) (citation omitted). Moreover, the non-moving party must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Matsushita Elec. Indus. Co.*, 475 U.S. at 586-87; *see also Barr v. Lafon*, 538 F.3d 554, 574 (6th Cir. 2008).

Accordingly, the ultimate inquiry is whether the record, as a whole, and upon viewing it in the light most favorable to the non-moving party, could lead a rational trier of fact to find in favor of the non-moving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 586-87; *see also Anderson*, 477 U.S. at 252 ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict – whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.") (emphasis in original) (internal quotations omitted).

## II. ABNER'S *PRO SE* COMPLAINT

Prior to entertaining the Defendants' Second Motion for Summary Judgment, this Court must carefully review Abner's *pro se* Complaint. *Persik v. Salazar*, 174 Fed. Appx. 421 (10th Cir. 2006) ("We construe broadly the allegations of a *pro se* complaint.") (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)); *Carroll v. Diederich*, No. 04-C-8291, 2005 U.S. Dist. LEXIS 29834, at *17-18 (N.D. Ill. Nov. 28, 2005) ("Cognizant of ... our duty to broadly construe a *pro se* complaint, we conducted a painstakingly close review of [Plaintiff's] Complaint."). Abner brings his Complaint pursuant to 42 U.S.C. §1983 and claims that his rights were violated under the 4th, 8th, and 14th amendments during his confinement by the ODRC. (Doc. 1.)

The Court declines to adopt the Defendants' reading of Abner's Complaint. (*See* Doc. 44 at 6 (narrowing Abner's complaint to the sole issue of whether his prison release date was properly

calculated).) Instead, it seems that Abner points to nine separate events in which, he contends, the Defendants violated his constitutional rights. He claims that:

- From 1975 to 1977, he was subject to cruel and unusual treatment at the Lima State Hospital sex unit. (Doc. 1 at ¶18.)

- In 1977, Defendants arbitrarily transferred him from a mental health system to the penal system, without due process of law. (*Id*. at ¶¶ 19-20.)

- In 1977, Defendants arbitrarily classified him as a maximum security prisoner, without due process of law. (*Id*.)

- Prior to 1984, as a result of his wrongful and arbitrary classification as a maximum security prisoner, he was raped repeatedly by other inmates. (*Id*. at ¶¶ 19-22.)

- In 1984, 1989, 1990, and 1994, Defendants arbitrarily transferred him throughout the state prison system. (*Id*. at ¶¶22-25.)

- On February 14, 2002, Defendants wrongfully subjected him to a hearing to determine if he should be classified as a sexual predator. (*Id*. at ¶28; Doc. 11 at 2-3.)[1]

- In July 2004, and every prior time he appeared before the parole board, Defendants wrongfully denied him parole. (Doc. 1 at ¶¶26,30; Doc. 44 Ex. A at 16.)[2]

- Defendants wrongfully imprisoned him beyond his maximum release date. (Doc. 1 at ¶27.)

- Defendants wrongfully altered his prison records, which is evidence of a conspiracy to violate his civil rights. (*Id*. at ¶31.)

It is these nine allegations that are currently before the Court.

## **III. PROCEDURAL HISTORY**

---

[1] In his Complaint, Abner says only that he was wrongfully subjected to a hearing to determine if he was a sexual predator: he does not specify the date of that hearing. The 2002 hearing, however, is the only such hearing on the record.

[2] Although Abner does not allege the particular dates on which his parole was denied, the July 2004 parole hearing is the final hearing on the record. (Doc. 44 Ex. A at 16 ("On July 21, 2004 Mr. Abner was heard by the Parole Board and continued to his Maximum Expiration Sentence.").)

This case has a somewhat atypical procedural history. On September 11, 2006, Abner filed his Complaint pursuant to 42 U.S.C. §1983 against the Defendants. (Doc. 1 at ¶¶9-11; *see also* Doc. 11.). On November 22, 2006, Defendants moved for summary judgment prior to filing their Answer in this action. (Doc. 4.) Defendants' exceptionally short motion did not contain supporting affidavits, nor did it make any particular argument beyond asserting flatly that the "statute of limitations period ... expired on April 22, 2006. (Doc. 4 at 5.) Furthermore, though not styled a Partial Motion for Summary Judgment, the Defendants' Motion was directed only at the statute of limitations as it implicated a portion of Abner's Complaint: Abner's claim that the Defendants' falsified documents in order to imprison him beyond the statutory maximum. (*Id*.)

Abner responded to Defendant's First Motion for Summary Judgment with a supporting affidavit and other documentary evidence. (Doc. 7.) He asserted both that the statue of limitations for his claims had not run, and, in the alternative, that he was entitled to equitable relief from that time period. (*Id*.) Defendants did not file a reply.

On June 13, 2007, this Court denied the Defendants' motion, noting explicitly the unusually limited record on which the Defendants' had moved. (Doc. 11 at 6) ("At this stage of the proceedings, the Defendants' argument fails to persuade the Court."). In particular, the Defendants did not respond at all "to Abner's assertion that he reasonably believed ... that his aggregated sentence [was properly calculated]." (Doc. 11 at 7.)

The Defendants have now filed their Second Motion for Summary Judgment. (Doc. 44.) This Motion makes a number of additional arguments and builds upon the argument raised in Defendants' First Motion for Summary Judgment. Consequently, this Order will refer both to briefing on Defendants' First Motion for Summary Judgment and to briefing on Defendants' Second Motion for Summary Judgment. (*See* Docs. 4, 7, 44, 53, 54.)

## IV. FACTUAL BACKGROUND

The facts of this case date to 1971, when Abner was convicted for Indecent Exposure and sentenced to one to ten years in prison. (Doc. 44 Ex. A.) Abner was released on parole for that crime in 1973. (Doc. 43-2 at 19.)

On June 26, 1975, while still on parole, Abner was indicted on fourteen counts of rape, seven counts of kidnaping, four counts of felonious assault, five counts of aggravated burglary, and one count of attempted rape. On October 16, 1975, Abner pled guilty to eight counts of rape, one count of attempted kidnaping, and two counts of aggravated burglary. (Doc. 44 at 7.) The state nolled the remaining counts.

On October 17, 1975, the trial court sentenced Abner to five to twenty-five years for each of the rape and burglary counts and three to ten years for the kidnaping count. The trial judge's journal entry stated "[s]entence as to counts one (1) and two (2) to run <u>consecutive</u> to each other, and concurrently with all remaining counts, that are to run concurrently with each other, and with sentence imposed." (Doc. 11 at 2.) Additionally, because Abner had not successfully completed parole for his 1971 sentence, he was required to serve that time in addition to the time for his 1975 convictions. (Doc. 44 at 7-8.)[3]

On February 14, 2002, Abner challenged the validity of his 1975 sentence, because the 1975 trial judge had issued his consecutive sentence on counts 1 and 2, despite the fact that count 2 had been nolled. At a 2002 hearing, the trial court determined that the intention of the 1975 sentencing order was to impose two consecutive sentences of five to twenty-five years on two of the remaining

---

[3] At various times throughout the history of this case, parties and courts have remarked on the unusual nature of a 10-year sentence for indecent exposure. Although of no practical use to Abner, the Court cannot help but note its amazement at both the sentence itself and the fact that the Defendants held Abner in prison to serve the entire ten years of this sentence.

-6-

counts and that the reference to count 2 had been in error. (*Id.*) The trial court, consequently, entered a *nunc pro tunc* entry modifying the original 1975 sentencing entry. (*Id.*) Abner appealed the court's findings.

On appeal, the Eighth District Court of Appeals for Cuyahoga County, Ohio determined that the *nunc pro tunc* entry was improper and remanded the case for re-sentencing. On April 23, 2003, the trial court re-sentenced Abner to ten to fifty years. (*Id.*)

Abner again appealed, and on April 22, 2004, the Eighth District Court of Appeals reversed the sentence the trial court had imposed on Abner. *See State v. Abner*, 2004 Ohio App. LEXIS 1749 (Ohio Ct. App. Apr. 22, 2004) ("[T]he greatest sentence appellant could have served, upon the face of the sentencing entry, was 5 to 25 years.... We find that appellant has served the time for which he was sentenced in 1975."). The Eighth District ordered Abner "discharged" from prison. *Id.*

Although the Eighth District had ordered Abner "discharged," the ODRC did not comply with the terms of the Eighth District's Order. Instead, the ODRC combined the 5 to 25 year sentence with the time remaining on his original 1971 conviction. (Doc. 44 Ex. A at 14.)

## V. THE STATUTE OF LIMITATIONS

In Ohio, a two-year statute of limitations applies to actions under 42 U.S.C. §1983. *Browning v. Pendleton*, 869 F.2d 989, 990 (6th Cir. Ohio 1989) (en banc); *Armstrong v. Fowler*, No.1:07 CV 3662, 2008 U.S. Dist. LEXIS 10225, at *5 (N.D. Ohio Feb. 12, 2008). This time-limit begins to run from the time a "plaintiff [knows] or has reason to know about the act providing the basis of his or her injury." *Cooey v. Strickland*, 544 F.3d 588, 590 (6th Cir. Ohio 2008) ("*Cooey III*"). In other words, "it is the standard rule that [time begins to run] when the plaintiff has a complete and present cause of action. This occurs when the plaintiff can file suit and obtain relief." *Cooey v. Strickland*, 479 F.3d 412, 416 (6th Cir. Ohio 2007) ("*Cooey II*") (citations omitted)

-7-

(quotations omitted).[4] Generally, "the statute of limitations commences to run, when the wrongful act or omission results in damages." *Id*. at 419 (citing *Wallace v. Kato*, 549 U.S. 384, 391 (2007)).

In the instant case, Abner filed his lawsuit on September 11, 2006. Any claims arising prior to September 11, 2004 are, consequently, time-barred under the statute of limitations. *See Browning*, 869 F.2d at 990; *Armstrong*, 2008 U.S. Dist. LEXIS 10225, at *5. Eight of Abner's claims must fail for this reason.

### A. Abner's First Six Claims Are Subject to a Straight-Forward Time-Bar

There can be no question from the record before the Court that the first six of Abner's nine allegations arise from actions that occurred prior to September 11, 2004.[5] Most of these concern events that occurred in the 1970s and 1980s and there is no dispute that Abner knew of these alleged violations at the time they occurred. While the Court does not discount the nature of the allegations Abner makes in these counts, it is without the power to adjudicate the merits of them, or to assess the credibility of Abner's assertions. *Id*.

### B. Abner's Wrongful Imprisonment Claim

A somewhat more complicated statute of limitations question is posed by Abner's allegation that he was wrongfully imprisoned by the defendants. (Doc. 1 at ¶27.) This claim must be

---

[4]More generally, the Sixth Circuit has explained that a court should look "to what event should have alerted the typical lay person to protect his or her rights." *A to Z, Inc. v. City of Cleveland*, 281 Fed. Appx. 458, 460 (6th Cir. Ohio 2008) (citing *Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 548 (6th Cir. 2000)).

[5] In particular, that Abner was: 1) subject to cruel and unusual treatment at the Lima State Hospital sex unit (Doc. 1 at ¶18); 2) arbitrarily transferred from a mental health system to the penal system, without due process of law (*id.* at ¶20.); 3) arbitrarily classified as a maximum security prisoner, without due process of law (*id*.); 4) repeatedly raped by other inmates (*id*. at ¶21);5) arbitrarily transferred throughout the state prison system (*id*. at ¶¶22-25); and 6) wrongfully subjected to a hearing to determine if he should be classified as a sexual predator (*id* at ¶28; Doc. 11 at 2-3).

understood as consisting of three independent allegations, two of which are time-barred.

### 1. Failure to Release in 1996

Abner seems to be alleging that he was wrongfully imprisoned from 1996 - 2004, because he might well have been released as early as 1996 had the Defendants correctly calculated his sentence. This, indeed, appears to be how the Defendants read his claim (*see* Doc. 44 at 16) and Abner does not dispute that such a claim is time-barred. Such an assertion is time-barred either because, as Defendant's assert, Abner had reason to know of the improper calculation of his sentence in 1975 when his conviction became final, or because Abner had actual knowledge of the error when he received the Eighth District's April 22, 2004 Order. Whichever date is used, the two-year statute of limitations on this allegation expired before Abner filed his complaint.

### 2. Failure to Release in Direct Violation of the Eighth District's Order

Abner can also be understood as contending that he was wrongfully imprisoned because the Defendants violated the express terms of the Eighth District's April 22, 2004 Order that he be discharged from prison. Abner first learned of the Eighth District's Order through the prison mail system on May 26, 2004. On or about that date, he asked a prison official to explain the effect of that judgement. (Doc. 11 at 3-4.) According to Abner, that official provided him with a document that showed the state had aggregated his twenty-five year sentence with the time remaining from his 1971 conviction. (*Id.*) Abner claims that he did not argue at the time that he should be released from prison, because, based on the advice provided by that prison official, he believed that the aggregation was in compliance with the Eighth District's Order. (*Id.*) Abner has argued that he reasonably relied on the advice of prison officials that the Defendants were complying with that Order and that he had no reason to know of the Defendants' failure to comply with that Order until meeting with a lawyer in October. (*See* Doc. 11 at 2-3.)

With respect to this claim, however, the statute of limitations began to run from the time that Abner received the Eighth District's Order on May 26, 2004. While, as noted in this Court's June 13, 2007 Order, "the statute of limitations begins to run when the plaintiff knows or has reason to know that the act providing the basis of his injury has occurred," (Doc. 11 at 6 (citations omitted)), that point is reached when a plaintiff has facts on which he can predicate a cause of action. *See Cooey II*, 479 F.3d at 416 ("[I]t is the standard rule that [time begins to run] when the plaintiff has complete and present cause of action. This occurs when the plaintiff can file suit and obtain relief.").[6] Here, it is clear that Abner had actual knowledge of a potential claim on May 26, 2004.[7]

---

[6] Abner's citation to *Kennan v. Bagley*, 262 F.Supp. 826 (N.D. Ohio 2003) is misplaced. *Kennan* stands for the proposition that the clock does not begin to run on the deadline for seeking habeas relief while a Court Order is being appealed. Abner analogizes this case, and argues that the time-limit for filing his lawsuit should not start to run until after the State finished appealing the Eighth District's Order. The principle articulated in *Kennan* does not apply here for a number of reasons, not the least of which is that the very issue before the Court is the Defendants conduct during the pendency of the appeal of the Eighth District's Order.

[7] Even if this Court were to accept Abner's contention that he had no reason to know of his injury until a conversation with his lawyer in October of 2004, the failure to immediately comprehend the implications of a court order does not toll the statute of limitations. *See Young v. Davis*, 554 F.3d 1254, -- (10th Cir. 2009) ("[Plaintiff] fails to explain how his lack of access to a law library during this six-month period prevented him from timely filing his complaint eighteen months later, before the statute of limitations expired."); *Richards v. Kleinhubert*, 263 Fed. Appx. 493, 495 (7th Cir. 2008) ("[T]hat [plaintiff] may not have understood the legal significance of [the government's action] is not sufficient to prove that his claim accrued later than the date of his injury.") (citing *Sides v. City of Champaign*, 496 F.3d 820, 826 (7th Cir. 2007)).

This is particularly true where, as here, the order in question was in no way technical. The order stated, simply: "[t]he appellant is discharged." *Abner*, 2004 Ohio App. LEXIS 1749, at *7. A reasonable person would understand that this meant that the Eighth District was ordering him "discharged" from prison.

The Court, similarly, declines Abner's invitation to apply the doctrine of equitable tolling to waive the statute of limitations in this case. Generally, "equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond the litigant's control." *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560-61 (6th Cir. 2000) (citations omitted). Indeed, "neither excusable neglect nor ignorance of the law are sufficient to invoke equitable tolling." *Weron v. Cherry*, No.

-10-

In his sworn affidavit, Abner testifies that when he read the Eighth District's Order [on May 26, 2004], he immediately thought that "[t]he new release date ... did not make any sense ... it was inappropriate to aggregate my sentence an additional 10 years." (Doc. 7 Ex. A1.) Indeed, in a May 26, 2004 letter, written <u>after</u> the conversation with the prison official, Abner states "I don't owe the state any more time, I'm over." (*Id*. Ex. A1 at ¶7; Ex. A2.)[8]

### 3. Failure to Release for an Improper Purpose

Finally, Abner can be understood as arguing that he was wrongfully imprisoned because the Defendants fabricated the document aggregating his 1971 and 1975 convictions and held him in custody to maintain the status quo while the Defendants appealed the Eighth District's Order to the Ohio Supreme Court. Unlike a claim that the Defendants violated the express terms of the Eighth District's Order by aggregating the remainder of his 1971 conviction with his 1975 conviction after the Eighth District Ordered his discharge, this claim is that the calculations the Defendants' showed Abner were themselves fabricated. This allegation, as explained in the Court's Order on the Defendants' First Motion for Summary Judgment, is <u>not</u> time-barred because Abner could not

---

1:08-CV-201, 2008 U.S. Dist. LEXIS 82153, at *21 (E.D. Tenn. Oct. 14, 2008) (citations omitted). Critically, nothing prevented Abner from complying with the statute of limitations. *Accord. Davis*, 554 F.3d at --. Although the Court was unable to reject equitable tolling as a matter of law on the almost non-existent record that existed when it ruled on Defendants' First Motion for Summary Judgment, which did not even include the Defendant's Answer to Abner's initial Complaint (*see* Doc. 11 at 8), the record now makes clear that the use of this "extraordinary" doctrine would be inappropriate.

[8] Although this affidavit was in the Court's possession at the time of the Defendants' First Motion for Summary Judgment, the Defendants did not rely upon it. (Doc. 4.) While a district court may properly consider all record evidence, a district court has no duty to search the record for evidence that supports a moving party's summary judgment motion. *Cf. Kallenberg v. Knox County Bd. of Educ.*, No. 3:06-CV-371, 2008 U.S. Dist. LEXIS 89645, at *17 (E.D. Tenn. Aug. 12, 2008) ("[T]he court is not required to search the record for some piece of evidence which might stave off summary judgment.") (quoting *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1191 (6th Cir. 1997).).

-11-

reasonably have been expected to discover this alleged fabrication until after his release from custody. (Doc. 11.)

### C. Abner's Claim for Wrongful Denial of Parole

According to the record before the Court, Abner last appeared before the parole board in July of 2004. Given the content of his May letter to the Warden, it is clear that Abner had the actual belief that his conviction was improperly calculated when he appeared before the parole board in July. (Doc. 7 Ex. A2 ("I don't owe the state any more time, I'm over.").)

Abner's claims for wrongful denial of parole, therefor, are time-barred, except to the extent that Abner asserts that he was improperly denied parole because, unbeknownst to Abner until October, Defendants or their agents fabricated the documents that were shown to Abner.

## VI. THE ALLEGATION OF FABRICATED DOCUMENTS

The only claim to survive the statute of limitations, therefore, springs from the allegation that the Defendants fabricated the documents shown to Abner calculating his new aggregated sentence.[9]

The problem with these claims, however, is that the Defendants now have provided this Court ample evidence that Abner's sentence was properly calculated. (*Id*. at 5-8.)[10] Indeed, this

---

[9] To be precise, Abner does not spell out in his complaint which documents he believes were fabricated. The documents calculating Abner's sentence are, however, the only contested documents that have been brought to the Court's attention either in the Complaint or in briefing on the two Motions for Summary Judgment. To the extent that Abner may theoretically have had different documents in mind when he alleged that Defendants' forgery of documents was evidence of a conspiracy to violate his civil rights (Doc. 1 at ¶31), the bare assertion that unknown documents were forged, without more, is not enough to support the claim of conspiracy to violate Abner's civil rights.

[10] As previously noted, the Court initially discussed Abner's wrongful imprisonment claim in response to Defendants' First Motion for Summary Judgment. (Doc. 4.) At that time, the Court remarked:

> The Defendants have not responded to Abner's assertion that he reasonably
> believed, as a result of the conversation with the unit manager, that his aggregated

evidence is not refuted in Abner's responsive brief.  The Court, therefore, concludes that the Defendants did not present Abner with fabricated documents.  Abner's claims that the Defendants' fabricated documents must be rejected as a matter of law.

## VII. CONCLUSION

For the reasons stated above, Abner does not assert a viable cause of action and Defendants are entitle to judgement as a matter of law.  The Defendants' Motion for Summary Judgment (Doc. 44) is hereby **GRANTED** and this case is **DISMISSED**.  Each side to pay its own costs.

---

sentence was in compliance with the [Eighth District's] order and, therefore, that he did not know or have reason to know of his injury until October 2004. Defendants also have not provided any documentation or testimony that might serve to counter Abner's argument.

(Doc. 11 at 8-9.)

The Court cannot help but question why the Defendants filed such an incomplete motion, given the great expense that could have been avoided to all parties, and inconvenience to the Court, had the Defendants simply provided the Court evidence that Abner was not held to allow the State time to appeal the Eighth District's Order in the first instance, or waited to file a dispositive motion until the Defendants had the documentation necessary to support it. Certainly, this has not been an efficient use of judicial resources.

**IT IS SO ORDERED.**

                <u>**s/Kathleen M. O'Malley**</u>
                **KATHLEEN McDONALD O'MALLEY**
                **UNITED STATES DISTRICT JUDGE**

**Dated: March 27, 2009**